2002 UT 50

UTAH DEPARTMENT OF ENVIRONMENTAL QUALITY, Division of Environmental Response and Remediation; and Kent Gray, Executive Secretary of the Utah Solid and Hazardous Waste Board, Plaintiffs and Appellees,

v.

K. Brent REDD, Sherrill Jean Redd, Woody's Enterprises, Ltd., Bill C. Buhler, Marathon Oil Company and Shell Oil Company, Defendants and Appellants.

Nos. 20010070, 20010105.

Supreme Court of Utah.

May 17, 2002.

Mark L. Shurtleff, Att'y Gen., Paul M. McConkie, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Fred R. Silvester, Spencer Siebers, David W. Tundermann, J. Michael Bailey, Richard J. Angell, Salt Lake City, for defendants.

DURRANT, Associate Chief Justice:

¶ 1 This interlocutory appeal concerns the statute of limitations period for a statutory cost recovery action based on the Underground Storage Tank Act ("USTA"). The defendants, Brent Redd ("Redd"), Woody's Enterprises, and Marathon Oil, filed two summary judgment motions before the district court, contending that the State's recovery action was barred by the statute of limitations. The district court partially granted these motions, holding that the three-year statute of limitations period established in subsection 78–12–26(4) of the Utah Code barred the recovery of cleanup costs incurred by the State on or before September 15, 1995. The district court denied the defendants' summary judgment motions as to costs incurred by the State after that date, however. It reasoned that such costs fell within the applicable limitations period because the State accrued a cause of action each time it made a cleanup payment.

¶ 2 We conclude that the State's cost recovery action accrued when (1) the State ordered the defendants to clean up the released petroleum, (2) the defendants refused to take corrective action, and (3) the State made a cleanup payment. We further conclude that the district court correctly held that the recovery of cleanup costs incurred by the State prior to September 16, 1995, was barred by the three-year statute of limitations period established in subsection 78–12–26(4) of the Utah Code. Finally, we affirm the district court's conclusion that costs incurred by the State between September 16, 1995, and September 16, 1998, were not barred by this limitations period.

## BACKGROUND

¶ 3 Before we recite the facts, we note that in reviewing a denial of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *See Estate Landscape & Snow Removal Specialists v. Mountain States Telephone & Telegraph Co.*, 844 P.2d 322, 324 n. 1 (Utah 1991). We state the facts accordingly.

¶ 4 On June 23, 1991, six underground storage tanks were removed from a gas station located in Monticello, Utah. Soil tests conducted during the removal of these tanks revealed that petroleum had been released into the surrounding area. The discovery of this released petroleum was thereafter reported to the Utah Department of Environ-

mental Quality, Division of Environmental Response and Remediation ("the State") on July 29, 1991.

¶ 5 Subsequently, the State, acting through the executive secretary of the Utah Solid and Hazardous Waste Control Board, ordered Woody's Enterprises, the entity that owned the Monticello property at the time the spill was discovered, to clean up the released petroleum. It then issued a comparable order to Redd, a previous owner of the property.[1] Between 1991 and 1994, the State repeatedly demanded that Woody's Enterprises and Redd undertake abatement, investigative, and corrective action pursuant to the USTA. *See* Utah Code Ann. §§ 19–6–401 to –429 (1999 & Supp.2001).

¶ 6 Notwithstanding these requests, Woody's Enterprises and Redd took no remedial action. The State therefore initiated its own cleanup effort and began incurring costs sometime in early 1995 (March or April). The State continued to incur cleanup costs until "at least November 24, 1999."

¶ 7 On September 16, 1998, the State filed an action against Redd, Woody's Enterprises, and Marathon Oil[2] based on section 19–6–418 of the USTA.[3] The State alleged in its complaint that the defendants had to pay both past and future cleanup costs related to the released petroleum because they were "responsible parties."[4] In response, Redd, Woody's Enterprises, and Marathon Oil moved for summary judgment, arguing that the State's cost recovery action was barred by the three-year statute of limitations period established in subsection 78–12–26(4) of the Utah Code. In so doing, they alleged that the State's cost recovery action accrued in its entirety at the time the State first incurred a cleanup cost.

¶ 8 The district court rejected the defendants' theory regarding the State's right to reimbursement for payments made pursuant to the USTA, however. Specifically, instead of holding that the State's cause of action accrued at one moment, it concluded that an indemnity cause of action accrued each time the State incurred a cleanup cost. Hence, the district court granted the defendants' summary judgment motions with respect to costs incurred by the State on or before September 15, 1995, but found costs incurred by the State after that date were not barred by the applicable three-year limitations period.

¶ 9 We then granted the defendants' petition for an interlocutory appeal pursuant to rule 5 of the Utah Rules of Appellate Procedure. On appeal, Redd and Woody's Enterprises contend that the district court erred in only partially granting their summary judgment motion for two reasons. First, they claim that public policy prohibits interminable litigation. Second, they argue that the USTA provides the State with only one cause of action to recover both past and future cleanup costs.

¶ 10 Marathon Oil contends that the district court erred in three respects. Like Redd and Woody's Enterprises, it claims that public policy prohibits the possibility of interminable litigation. Second, it contends that the applicable statute of limitations period was either triggered on the date the State

1. Redd owned the property at issue from January 23, 1984, to January 1, 1990. He then sold it to Woody's Enterprises, but later repurchased it on October 14, 1996, and became a co-owner with Sherrill Redd.

2. The State sued Marathon Oil because it was the corporate successor to Husky Oil, an entity which owned or operated the gas station at issue from February 26, 1971, to December 1, 1972, and from January 23, 1984, until March 6, 1984.

3. The State also sued Sherrill Redd, Bill Buhler, and Shell Oil Company. Those claims are not before us, however, for various reasons: (1) the State's action against Sherrill Redd was dismissed; (2) Buhler requested a stay pending settlement negotiations; and (3) Shell Oil Company entered into a consent decree with the State on May 14, 2001.

4. As defined in the USTA, a

'[r]esponsible party' means any person who[] is the owner or operator of a facility[,] owns or has legal or equitable title in a facility or an underground storage tank[,] owned or had legal or equitable title in the facility at the time any petroleum was received or contained in the facility[,] operated or otherwise controlled activities at the facility at the time any petroleum was received or contained at the facility[,] or is an underground storage tank installation company.

Utah Code Ann. § 19–6–402(26)(a) (1999).

first incurred cleanup costs (March or April 1995) or on the failure of Redd to clean up the site on March 18, 1993. Finally, it asserts that the State's claim against it was not an indemnity action but a subrogation action with one accrual date.

¶ 11 The State responds ·that its claims against the defendants constitute quasi-contract/indemnity actions, not tort actions, because it seeks reimbursement rather than damages. Relying on this reasoning, it argues that the three-year statute of limitations period established in subsection 78–12–26(4) of the Utah Code began to run each time it incurred a cleanup cost. The State further argues that Marathon Oil's subrogation argument is misplaced because the statutory provision on which it relies is inapplicable. The State also contends that policy considerations behind the USTA allow for multiple recovery actions. Lastly, the State insists that its position is consistent with other public coffer cases.

## ANALYSIS

### I. STANDARD OF REVIEW

 ¶ 12 Whether the district court correctly applied the appropriate statute of limitations period is a legal question, which we review for correctness. *See Estes v. Tibbs,* 1999 UT 52, ¶ 4, 979 P.2d 823; *see also Taylor v. Am. Fire & Cas. Co.,* 925 P.2d 1279, 1281 (Utah Ct.App.1996) (declaring that whether the district "court correctly granted or denied a motion for summary judgment is a question of law" reviewed for correctness). Where this review requires us to examine statutory language, we look first to the plain meaning of the statute. *State v. Ostler,* 2001 UT 68, ¶ 7, 31 P.3d 528.

### II. THE APPLICABLE STATUTE OF LIMITATIONS PERIOD

¶ 13 It is undisputed that subsection 78–12–26(4) of the Utah Code establishes the applicable statute of limitations period governing the State's action. Indeed, subsection 78–12–26(4) explicitly states that "[a]n action

may be brought within three years … for a liability created by the statutes of this state," Utah Code Ann. § 78–12–26(4) (1999), and all the parties concede that the State's lawsuit was based on a liability arising out of a statute (i.e., a cost recovery action brought pursuant to the USTA).

### III. RUNNING OF THE STATUTE OF LIMITATIONS

¶ 14 Given that subsection 78–12–26(4) applies to the present action, we must now determine when the three-year statute of limitations period for such actions began to run. Redd, Woody's Enterprises, and Marathon Oil maintain that the State's lawsuit should be treated as a tort claim that accrued in its entirety when the State first incurred a cleanup cost (March or April 1995).[5] They further claim that, since the State did not file its complaint until September 16, 1998, its suit was completely barred by the statute of limitations and that no cleanup costs could be recovered.

¶ 15 The State, reasoning that its claim is more analogous to a quasi-contract action, counters that the three-year statute of limitations period established in subsection 78–12–26(4) of the Utah Code began to run only when it made a cleanup payment. Put another way, the State asserts that, although the statute of limitations had run on costs it incurred prior to September 16, 1995, costs incurred after that date are not barred by the applicable limitations period. We accept neither the position proffered by the State nor the defendants; instead, we conclude that the plain language of sections 19–6–420 and 19–6–424.5 of the USTA demonstrates the applicable statute of limitations period for the State's cost recovery action began to run after three events had transpired.

¶ 16 In reaching this conclusion, we first note that, under Utah law, statute of limitations periods are generally triggered when a plaintiff's cause of action accrues. Utah Code Ann. § 78–12–1 (1999); *see also DOIT, Inc. v. Touche, Ross, & Co.,* 926 P.2d 835,

---

**5.** We note that Marathon Oil contends in the alternative that the State's lawsuit was a subro- gation action.

843 (Utah 1996). Indeed, section 78–12–1 of the Utah Code sets forth a default rule for all actions governed by chapter 78, declaring as follows: "[c]ivil actions may be commenced only within the periods prescribed in this chapter, *after the cause of action has accrued,* except in specific cases where a different limitation period is prescribed by statute." Utah Code Ann. § 78–12–1 (1999) (emphasis added). The USTA does not set forth a statute of limitations period different than the one established in subsection 78–12–26(4) of the Utah Code, but is silent regarding the applicable statute of limitations period. *See* Utah Code Ann. §§ 19–6–401 to –429 (1999 & Supp.2001). The default rule of section 78–12–1 therefore applies and the statute of limitations period for the State's statutory recovery action is three years from the date its cause of action accrued. *See* Utah Code Ann. § 78–12–26(4) (1999).

¶ 17 The precise time that a cause of action actually accrues under the USTA depends upon multiple events, however. In fact, the plain language of the USTA establishes that three events must occur before a cause of action accrues under its provisions. Subsection 19–6–424.5(1)(c) proclaims that *"[a]fter providing notice* and opportunity for comment *to responsible parties* . . . named under Section 19–6–420, *the executive secretary may* . . . take action . . . to *recover costs* from responsible parties, *including costs of any investigation, abatement, or corrective action performed under this part."* Utah Code Ann. § 19–6–424.5(1)(c) (1999) (emphasis added). Additionally, section 19–6–420 states that *"if the owner or operator fails to take* . . . *corrective action ordered by the executive secretary, the executive secretary may* . . . *recover costs* from responsible parties equal to their proportionate share of

liability . . . ." *Id.* § 19–6–420(2)(b)(iv) (emphasis added). Finally, subsection 19–6–424.5(9)(b) of the USTA provides that *"[i]f the executive secretary makes payments* from the fund or state cleanup appropriation, *he may recover the amount paid* . . . ." *Id.* § 19–6–424.5(9)(b) (emphasis added). Accordingly, when viewed together, the plain language of subsections 19–6–424.5(1)(c), –420(2)(b)(iv), and –424.5(9)(b) of the Utah Code demonstrates that no cause of action accrues under the USTA until (1) the State orders the owners or operators of an underground storage tank to remedy a petroleum spill, (2) the owners or operators fail to take corrective action, and (3) the State actually incurs a cleanup cost.

¶ 18 Assuming all three of these events have transpired, the State may file a statutory cost recovery action against the responsible parties to collect the cleanup costs it has incurred. If a defendant is found liable, the State is entitled to recover the costs it has incurred within three years of the filing of its complaint. Utah Code Ann. § 78–12–26(4) (1999). It may not recover future or estimated costs, however, because it lacks a viable cause of action for such costs until it actually incurs them.[6] Utah Code Ann. § 19–6–424.5(9)(b) (1999).

## IV. APPLICATION OF THE THREE-YEAR STATUTE OF LIMITATIONS PERIOD

¶ 19 Applying the three-part test described above for determining the accrual date of a cause of action based on the USTA to the present case, we note that the State ordered Redd and Woody's Enterprises, as the owners of the Monticello property, to clean up the released petroleum. We further note that both owners failed to comply with this

---

**6.** We realize that the practical effect of the USTA creates the possibility of multiple recovery actions being filed by the State. This is not the same as allowing an individual lawsuit to go on in perpetuity, however, because once the State actually accrues a cause of action under the USTA, it only has three years in which to file a complaint. Thus, although multiple causes of action can arise, individual actions must be filed within a three-year window.

Moreover, our decision to allow multiple recovery actions is supported by this Court's recent

ruling in *Department of Natural Resources v. Huntington Cleveland Irrigation Company,* 2002 UT 75, ¶¶ 24–27, — P.3d —[, 2002 WL 1750789]. In that case, we held that although multiple suits to recover for overassessments would be permitted, the statute of limitations began to run under subsection 78–12–26(4) each time Huntington denied voting rights to the Division of Wildlife Resources. *Id.* at ¶¶ 25–26.

directive and that the State began incurring cleanup costs in early 1995, which continued until "at least November 24, 1999." Accordingly, the State first possessed a viable cause of action under the USTA in early 1995 and acquired new causes of action as it incurred additional cleanup costs.

¶ 20 While it had a viable cause of action as early as March or April 1995, the State's statutory cost recovery action against Redd, Woody's Enterprises, and Marathon Oil was not filed until September 16, 1998. Costs incurred on or before September 15, 1995, therefore fall outside the three-year statute of limitations period established in subsection 78–12–26(4) of the Utah Code. The district court thus correctly dismissed those costs by granting summary judgment in favor of the defendants.

¶ 21 Costs incurred by the State between September 16, 1995, and September 16, 1998, however, fall within the requisite statute of limitations period. As such, they are potentially recoverable. We therefore affirm the district court's conclusion that such costs are not barred by the applicable statute of limitations period. In reaching this conclusion, however, we note that whether Redd, Woody's Enterprises, and Marathon Oil are liable for such costs remains an unresolved issue. Consequently, the State's ability to recover these costs still depends upon the district court's future resolution of liability.[7]

## CONCLUSION

■ ¶ 22 We hold that the State accrued a cause of action when (1) it ordered Redd and Woody's Enterprises to remedy the released petroleum, (2) Redd and Woody's Enterprises refused to take corrective action, and (3) the State incurred a cleanup cost. We therefore affirm the district court's conclusion that recovery of cleanup costs incurred by the State prior to September 16, 1995, was barred by the applicable statute of limitations. We further affirm the district court's

conclusion that costs incurred by the State between September 16, 1995, and September 16, 1998, fell within the applicable limitations period.

¶ 23 Chief Justice DURHAM, Justice HOWE, Justice RUSSON, and Justice WILKINS concur in Associate Chief Justice DURRANT'S opinion.

---

7. With respect to costs incurred after September 16, 1998, we conclude that they had not yet accrued at the time the State filed its complaint. Whether they should be dismissed as premature, whether the State should be allowed to amend its complaint, or whether some other action is ap-

propriate is a determination that we leave to the district court. We decline to answer this question because it was not argued below by the parties and has not been briefed or argued on appeal.